UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| C.P., R.P., and V.P., <br><br>     Plaintiffs, <br><br> v. <br><br> TENNESSEE DEPARTMENT OF EDUCATION and RUTHERFORD COUNTY BOARD OF EDUCATION, <br><br>     Defendants. | Case No. 3:16-cv-02938 <br><br> Magistrate Judge Newbern |

## MEMORANDUM AND ORDER

Upon the consent of the parties, this case was transferred to the undersigned to conduct all proceedings and enter a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 30.) Now pending are motions to dismiss filed by Defendants Rutherford County Board of Education (RCBOE) and Tennessee Department of Education (TDOE). (Doc. Nos. 6, 13.) For the following reasons, both motions are GRANTED.

## I.   Background

The following facts are taken from C.P.'s complaint and its accompanying exhibits, which are presumed to be true for purposes of these motions.

### A.  Factual History

When the complaint in this action was filed, C.P. was 17 years old. (Doc. No. 1, PageID# 4, ¶ 12.) C.P. is nonverbal, functions at the level of a toddler, and has self-destructive and compulsive behaviors that impede his education. (*Id.*; Doc. No. 7, PageID# 52; Doc. No. 14, PageID# 172.) C.P. uses an "augmentative and alternative communication" device to express

himself. (Doc. No. 1, PageID# 7, ¶ 30.) He has been diagnosed with autism and epilepsy and is eligible to receive special education services under the Individuals with Disabilities Education Act (IDEA). (*Id.* at PageID# 4, ¶ 12; Doc. No. 7, PageID# 52; Doc. No. 14, PageID# 172.) C.P. was receiving services under an IEP in North Carolina before he and his parents moved to Rutherford County, Tennessee in the summer of 2015. (Doc. No. 1, PageID# 5–6, ¶¶ 23, 26.) Through the North Carolina IEP, C.P. received "Speech and Language, Special Education, Occupational Therapy, American Sign Language ('ASL') instruction, Assistive Technology ('AT'), Adaptive Physical Education and Behavioral Supports." (*Id.* at PageID# 6, ¶ 26.) C.P. also received "1:1 aide services" at his North Carolina school. (*Id.* at PageID# 8, ¶ 34.)

C.P.'s parents wanted him to receive the same services at his new school in Rutherford County, but found the RCBOE's initial efforts at establishing C.P.'s accommodations lacking. The personnel invited to C.P.'s first IEP meeting did not include a board certified behavior analyst, school medical representative, sign language teacher, or an adaptive physical education teacher, all of whom the parents had found to be essential components of C.P.'s North Carolina plan. (*Id.* at PageID# 6, ¶ 28.) The IEP team who convened on September 1, 2015, also did not include a "regular education teacher." (*Id.* at PageID# 7, ¶ 29.) The parents were asked to consent to allow the school to evaluate C.P. to determine his eligibility to receive special education in Tennessee. (*Id.*; Doc. No. 7, PageID# 53; Doc. No. 14, PageID# 172–73.) The parents were told that there was to be no evaluation for the assistive technology that C.P. used to communicate and that the school might not supply the device C.P. used. (Doc. No. 1, PageID# 7, ¶ 30.) They also learned that the detailed medical information they had provided the school would not be incorporated into the IEP; instead, an Individual Health Plan would be developed. (*Id.* at PageID# 7, ¶ 31.) The parents expressed their concerns with these decisions. (*Id.* at PageID# 7–8, ¶ 32.)

At the second IEP meeting on September 9, 2015, the parents received an updated draft of the IEP which contained fewer services than the North Carolina IEP had provided and eliminated "1:1 aide services."[1] (*Id.* at PageID# 8, ¶ 34.) The parents allege that they received no explanation for the reduction in services. (*Id.*) At the end of the meeting, the parents informed the district that they would be seeking legal representation. (*Id.* at PageID# 8, ¶ 35.) They also decided not to allow C.P. to attend school until the district agreed to provide him with 1:1 aide services, a demand that they supported with a letter from C.P.'s physician. (*Id.* at PageID# 9, ¶¶ 40, 41.)

At a third IEP meeting on October 29, 2015, school officials again declined to provide all the services included in the North Carolina IEP, at least until the district had completed its own evaluations. (*Id.* at PageID# 9, ¶ 43.) However, the school did state that C.P. would receive 1:1 aide services if he returned to school. (*Id.* at PageID# 10, ¶ 44; Doc. No. 7, PageID# 54.) The parents rejected the offer, stating that, without behavioral and ASL supports,[2] 1:1 aide services would not be enough to "ensure C.P.'s well-being." (Doc. No. 1, PageID# 10, ¶ 44.)

On September 28, 2015, between the second and third IEP meetings, Plaintiffs' counsel sent an administrative complaint to the TDOE alleging that the RCBOE had violated the IDEA. (*Id.* at PageID# 9, ¶ 42; Doc. No. 7, PageID# 54; Doc. No. 14, PageID# 173.) TDOE commenced an investigation, the results of which the parents received in a letter on November 20, 2015. (Doc. No. 1, PageID# 10, ¶45; Doc. No. 7, PageID# 54; Doc. No. 14, PageID# 173.) The TDOE found that the RCBOE had unlawfully failed to include a regular education teacher at the IEP meetings

---

[1]     RCBOE states that it offered to provide C.P. with "homebound education services" but that the parents failed to return the paperwork needed to authorize such services. (Doc. No. 7, PageID# 54.)

[2]     According to RCBOE, the revised IEP presented on September 9, 2015 included ASL instruction. (Doc. No. 7, PageID# 53.)

and ordered the RCBOE to train its staff on that unmet obligation (*Id.*; Doc. No. 7, PageID# 54). It also required RCBOE to provide a written summary of the next IEP meeting. (Doc. No. 14, PageID# 173.) Plaintiffs' counsel then requested the documentation that RCBOE had furnished TDOE during the investigation. (Doc. No. 1, PageID# 10, ¶ 47.) TDOE complied, producing emails exchanged by RCBOE and TDOE that Plaintiffs claim reveal a "clear bias" of the TDOE to "decid[e] complaints in the favor of the school districts." (*Id.* at PageID# 10, ¶ 48.) That bias, Plaintiffs argue, is a "systemic problem" with the TDOE's complaint resolution process. (*Id.* at PageID# 2–3, ¶ 7.)

Convinced that C.P. would not be able to receive "a free and appropriate public education while enrolled in Rutherford County Schools," the parents chose to move the family to Williamson County. (*Id.* at PageID# 11, ¶¶ 51, 52.) Plaintiffs never requested a due process hearing. (*Id.* at PageID# 3, ¶ 9; Doc. No. 7, PageID# 54.)

### B. Procedural History

Plaintiffs filed this complaint on November 19, 2016, alleging violations of the IDEA, the ADA, and § 504 and seeking a declaration that Defendants violated plaintiffs' rights under all three laws, reimbursement for the logistical and emotional expenses associated with their relocation to Williamson County, an order that TDOE "revise [its] administrative complaint procedure so that it complies with IDEA," attorney's fees, and any other relief the Court finds just. (Doc. No. 1, PageID# 12–13.) Defendants RCBOE and TDOE filed their motions to dismiss on January 13, 2017 and January 24, 2017, respectively. (Doc. Nos. 6, 13.) Plaintiffs responded to those motions (Doc. Nos. 15, 19) and Defendants filed replies (Doc. Nos. 23, 25). With the Court's permission, Plaintiffs filed one sur-reply to RCBOE's reply. (Doc. Nos. 26, 27.)

Defendants initially argue that Plaintiffs' failure to exhaust administrative remedies under the IDEA either deprives this Court of subject matter jurisdiction to hear the instant lawsuit, or requires dismissal for failure to state a claim. (Doc. No. 7, PageID# 54; Doc. No. 14, PageID# 174–75.) Alternatively, the Defendants argue that (1) compensatory damages are not available under any of the statutes that Plaintiffs have invoked and therefore their claims must be dismissed (Doc. No. 7, PageID# 68; Doc. No. 14, PageID# 183); (2) Plaintiffs have failed to state a claim under the ADA and § 504 (Doc. No. 7, PageID# 66; Doc. No. 14, PageID# 183); and (3) that those claims are barred by the applicable statute of limitations (Doc. No. 7, PageID# 68–69; Doc. No. 14, PageID# 172 n.1). In a joint motion filed on January 23, 2018, the Defendants withdrew their argument that Plaintiffs' failure to exhaust deprives this Court of jurisdiction, citing *Sophie G. v. Wilson County Schools*, 265 F. Supp. 3d 765 (M.D. Tenn. 2017). (Doc. No. 35.) The Court therefore analyzes Defendants' arguments made under under Rule 12(b)(6).

## II.    Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further

factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim brought under the IDEA may be dismissed on a 12(b)(6) motion for failure to exhaust the act's administrative remedies, *Doe ex rel. Doe v. Dublin City Sch. Dist.*, 453 F. App'x 606, 609 n.1 (6th Cir. 2011), but only if the failure to exhaust "appears on the face" of the complaint. *Retamar-Lopez v. Bd. of Educ. of Dublin City Sch. Dist.*, No. 2:13-CV-0161, 2014 WL 221944, at *3 (S.D. Ohio Jan. 21, 2014) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## III.    Analysis

The IDEA ensures a free appropriate public education (FAPE) for children with disabilities. 20 U.S.C. § 1400(d)(1)(A). The primary vehicle for the provision of a FAPE is the individualized education program (IEP), a personalized plan to achieve the goal of meeting the child's educational needs crafted by the child's "IEP Team," which is comprised of a group of school officials, teachers, and parents. *Fry v. Napoleon Cmty. Sch.,* 137 S. Ct. 743, 749 (2017) (quoting 20 U.S.C. § 1414). When a student receiving IDEA services transfers interstate and enrolls in a new school within a new school district within the same academic year, that student is entitled to services comparable to the ones provided for in the previous school system's IEP, until such time as the new school system can determine whether it is necessary to develop a new IEP. 20 U.S.C. § 1414(d)(2)(C)(i)(II).

In addition to the IDEA's protections for disabled students, Section 504 of the Rehabilitation Act prohibits federally-funded programs from excluding or discriminating against disabled individuals, 29 U.S.C. § 794, while Title II of the ADA safeguards the right of "full and equal enjoyment" of goods, services, facilities, privileges, advantages, or accommodations for

disabled individuals in places of public accommodation. 42 U.S.C. § 12182(a). The IDEA explicitly does not "restrict or limit the rights . . . and remedies available under" these other federal laws, "except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." *Fry,* 137 S. Ct. at 750 (quoting 20 U.S.C. § 1415(l)).

In *Fry*, the Supreme Court considered a case brought under the Rehabilitation Act and the ADA, but not the IDEA. After establishing that the IDEA's exhaustion requirement would still apply to the Frys' case if the gravamen of their complaint was the denial of a FAPE, the *Fry* court described the statute's administrative process as follows:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). See § 1415(b)(6). That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, see § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); see § 1415(f)(3)(A)(i). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. See § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. See § 1415(i)(2)(A).

137 S. Ct. at 749. The *Fry* court ultimately could not determine on the record before it whether or to what extent the Frys had invoked the early stages of the IDEA's administrative process before filing suit or whether the gravamen of their complaint was the denial of a FAPE. The case was remanded for determination of those issues. *Id.* at 758–59. Unlike *Fry*, this case was brought under the IDEA, Rehabilitation Act, and the ADA, explicitly because of " [Defendants'] failure to provide C.P. with a [FAPE]." (Doc. No. 1, PageID# 1, ¶ 1.) There is not any dispute, nor could

there be, that the gravamen of the complaint is the denial of a FAPE, "the IDEA's core guarantee." *Fry*, 137 S. Ct. at 748. Plaintiffs do not argue that their Rehabilitation Act and ADA claims are not subject to the IDEA exhaustion requirement.

Plaintiffs initiaged this action with an administrative complaint. *See id.* at 757 ("[A] court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream . . . with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations."). Their decision to abandon that process for the sake of C.P.'s immediate needs was obviously made with his best interests in mind. However, without having proceeded to a due process hearing, their claims in this Court are only viable if they can establish that their case falls within one of the recognized exceptions to the IDEA's exhaustion requirement.

Exceptions are made to the IDEA's exhaustion requirement where administrative remedies would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988) (superseded on other grounds by statute, 20 U.S.C. § 1415(k)(1)(G)). Administrative remedies under the IDEA are futile or inadequate "[i]n special circumstances in which the remedies under the administrative process would not be sufficient to make [the plaintiff] whole" considering the type of harm alleged. *Gean v. Hattaway,* 330 F. 3d 758, 773 (6th Cir. 2003) (citing *Covington v. Knox City School Systems*, 205 F.3d 912, 917 (6th Cir. 2000)). Administrative remedies may also be futile or inadequate when relief is sought on the basis of systemic IDEA violations. *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2016 WL 3763264, at *9–10 (M.D. Tenn. July 14, 2016); *see Bishop v. Oakstone Academy*, 477 F. Supp. 2d 876, 883 (S.D. Ohio 2007).

Here, Plaintiffs seek to avoid the exhaustion requirement by arguing "that there is a systemic problem with the state complaint resolution process," as evidenced by "[t]he

documentation received from the state investigator as well as the school district reveal[ing] that the state investigator readily accepted unsubstantiated assertions from the school district without allowing the parents an opportunity to refute the assertions." (Doc. No. 19, PageID# 228–29.) However, unlike *N.S. v. Tennessee Department of Education*, in which the plaintiffs were given appropriate IEPs but complained of unavoidable violations due to "the current state of educational policies and practices throughout the [county] and the state of Tennessee," 2016 WL 3763264 at *9, this case addresses only the alleged inadequacy of the services C.P. received under the Rutherford County IEP, with a secondary nominal challenge to the state complaint resolution process, which Plaintiffs allege did not involve a true investigation by the TDOE, but an unquestioning reliance on the RCBOE's assertions. (Doc. No. 1, PageID# 2–3, ¶ 7.)

A claimed exception to the exhaustion requirement based on systemic violations of the IDEA does not apply where, as here, the complaint focuses on the particularized concern of one family for the denial of their a FAPE to their child, rather than seeking meaningful relief from structural problems with the state or local systems that implement IDEA mandates. *Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 885 (S.D. Ohio 2007). Plaintiffs' complaint demonstrates the cursory nature of their systemic violation claim against the TDOE. Plaintiffs term this case "a classic example of a systemic problem with the TDOE's complaint resolution process where TDOE consistently finds for the school district by relying on the unsubstantiated assurances of school district personnel rather than the evidence presented by parents seeking relief." (Doc. No. 1, PageID# 3.) To support that assertion, Plaintiffs allege only that communications between the TDOE and the RCBOE regarding C.P.'s IEP show a "chummy" relationship between individual actors, allowing the TDOE to "easily explain away any discrepancies or inconsistencies in the evidence provided by the parents and their attorney." (Doc. No. 1, PageID# 10.) That

individualized example does not show a systemic wrong. Plaintiffs also cite "two other cases pleading similar claims pending in this Court as well as in the United States District Court [for the] Eastern District of Tennessee that include TDOE as a Defendant." (*Id.* at PageID# 3 n.1) (citing *L.H., et al v. Hamilton County Department of Education*, Case No. 1:14-cv-00126-CLC-SKL (E.D. Tenn.) (filed Feb. 19, 2014); *A.G., et al., v. Tennessee Department of Education, et al.*, Case No. 1:16-cv-00027 (M.D. Tenn.) (filed April 25, 2016)). A review of the complaints filed in these cases reveals that the plaintiffs in both actions made far more extensive allegations against the TDOE that are more readily categorized as asserting systemic violations. For example, the plaintiffs in *A.G.* alleged that the TDOE refused to make final orders from due process hearings available to the public, in violation of the Tennessee Open Records Act. Doc. No. 1, *A.G.*, Case No. 1:16-cv-00027 (complaint). In *L.H.*, the plaintiffs claimed that the TDOE did not provide the two avenues for resolution of complaints (mediation and a due process hearing) required by the IDEA and was not fulfilling its oversight duties regarding the provision of FAPEs to children with disabilities. Doc. No. 22, *L.H.*, Case No.l 1:14-cv-00126-CLC-SKL (amended complaint).

On the basis of these allegations and citations, Plaintiffs seek a declaration that Defendants violated C.P.'s rights and an award of damages based on that violation, before seeking the issuance of an "order that the TDOE revise their administrative complaint procedure so that it complies with the IDEA." (Doc. No. 1, PageID# 13.) But Plaintiffs' allegations fall short of alleging facts to support that relief or the finding of a plausible systemic violation sufficient to waive the exhaustion requirement in this case. *See T.D. v. Rutherford Cnty. Bd. of Educ.*, No. 3:16-cv-1488, 2017 WL 77114, at *4–6 (M.D. Tenn. Jan. 9, 2017) (finding no exception to exhaustion requirement where complaint merely alleged that denial of FAPE "must be linked to a systemic policy or practice" but in fact existence of IDEA violation "will turn on a factual review of whether

an individual student has been denied a FAPE, given his or her particular need for related services and the amount and quality of services that have been provided.").

While Plaintiffs undoubtedly would have preferred a more thorough investigation and decision from the TDOE in resolving their administrative complaint, their allegations fail to plausibly support an inference that the outcome of that complaint resulted from the TDOE's systemic predisposition toward local school districts. But even if it did, a determination that the entire administrative process would therefore be futile would require an unwarranted leap. The Court thus finds that the "systemic violations" exception to IDEA exhaustion invoked by Plaintiffs does not apply in this case. Further, Plaintiffs have failed to plausibly allege an IDEA claim against the TDOE upon which relief could be granted, even if the exhaustion requirement had been met. Dismissal of Plaintiffs' claims against the TDOE under Rule 12(b)(6) is warranted on both grounds.[3]

---

[3] Additionally, while they do not argue it as grounds for an exception in response to the motions to dismiss, Plaintiffs plead in their complaint that proceeding to a due process hearing before an ALJ would be futile because "[ALJs] assigned to hear due process cases in Tennessee lack authority to hear cases that include TDOE as a defendant." (Doc. No. 1, PageID# 3, ¶ 9.) The Court notes the recent decision in *I.L. through Taylor v. Knox County Board of Education, et al.*, in which the court found that "[t]he structure of the IDEA's grievance procedure implies that state educational agencies were not meant to be parties to due process hearings," and, therefore, that the plaintiff in that action was not required to have named the TDOE as a defendant to her administrative complaint to bring claims against it in a federal action. 257 F. Supp. 3d 946, 958 (E.D. Tenn. 2017). The Court finds *I.L.* distinguishable from this action in that I.L. exhausted her claims before proceeding to federal court, thereby creating the administrative record and opportunity to address error that are the purpose of an exhaustion requirement. The Court need not determine the full import of that distinction with regard to C.P.'s exhaustion of claims against the TDOE in this case, or whether *I.L.* creates a rule that claims against the TDOE need never be exhausted. *Compare Crocker v. Tennessee Secondary School Athletic Association*, 873 F.2d 933, 936 (6th Cir. 1989) (requiring exhaustion of claims against TDOE under IDEA's predecessor statute); *Horen v. Bd. of Ed. of Toledo City Sch. Dist.*, 568 F. Supp. 2d 850, 856 (N.D. Ohio 2008) (rejecting Ohio Department of Education's argument that it could not be a party to a due process complaint because of its statutory role as facilitator of due process proceedings). C.P. has failed to allege a claim against the TDOE upon which relief could be granted regardless of exhaustion.

Plaintiffs allegations do not support a waiver of the exhaustion requirement with regard to the RCBOE. *See Doe v. Dublin City Sch. Dist.*, 453 F. App'x 606, 609–10 (6th Cir. 2011) ("Here, while the School District's conduct is far from exemplary, it has not clearly failed to follow the requirements of the Act in a manner that demonstrates that resort to the administrative process would have been futile. . . . Although the Does were not satisfied with the School District's actions, the Act contemplates this situation and directs aggrieved parties to request a due process hearing in such a situation."). RCBOE rightly argues that, "[w]hether or not TDOE conducts fair, impartial, and thorough investigations of administrative complaints is irrelevant to the issues raised against RCBOE in Plaintiffs' complaint" which center on RCBOE's "numerous procedural violations" resulting in "a denial of FAPE." (Doc. No. 1, PageID# 12; Doc. No. 7, PageID# 63.) Because Plaintiffs' allegation of a systemic violation revolves around TDOE,[4] this case is distinguishable from recent cases in which courts have held that the systemic violation exception applied to claims brought against local school districts. *See N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2016 WL 3763264, at *2 (M.D. Tenn. July 14, 2016) (involving allegations that "misuse and overuse of isolation and restraint is a systemic problem throughout [Knox County Board of Education schools]"); *W.H.*, 2016 WL 236996, at*2 (involving allegations that the local school district "routinely funnels students with disabilities into more restrictive environments than necessary" to benefit from state-level financial incentives).

Plaintiffs do not contest that they have not exhausted their available administrative remedies or that their IDEA, ADA, and Rehabilitation Act claims fall under a general exhaustion

---

[4] Plaintiffs do argue that the failure of TDOE's complaint resolution process stemmed "in part" from "the misrepresentations and assurances provided by [an RCBOE employee]." (Doc. No. 15, PageID# 202.) But that allegation alone does not enable the inference that RCBOE has a systemic policy of deceiving TDOE during the administrative complaint resolution process.

requirement. Because Plaintiffs have not alleged facts sufficient to plead an exception to that requirement, their action must be dismissed for failure to state a claim on which relief may be granted.

**III.    Conclusion**

In light of the foregoing, the Court GRANTS the Defendants' motions to dismiss (Doc. Nos. 6 & 13). This case is DISMISSED WITHOUT PREJUDICE for Plaintiffs to exhaust their administrative remedies as required under the IDEA, 20 U.S.C. § 1415.

This order shall serve as a final judgment in this action.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge